[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married on August 2, 1971 in Southington, Connecticut. The parties have resided in the state of Connecticut since that time. They have no minor children issue of the marriage although they have adult children from earlier marriages. Neither party has received financial assistance from the state of Connecticut or any municipality or town. The court has jurisdiction to hear this matter. The parties stipulated that their marriage has broken down irretrievably.
The case came to this court on January 12, 1999. It was tried to this court on May 9, 2000. After the hearing which lasted approximately 3 hours, the court dissolved the marriage on the grounds of irretrievable breakdown. It also ordered that the marital residence be listed for sale, that the plaintiff return to the defendant his paintings and coin collection, if she has them, and that the plaintiff be restored to the CT Page 5723 name Ruth Ippolito. In addition, the court permitted the parties and their counsel until May 15 to stipulate as to a listing price for the property. The court further provided that it would enter further financial orders by such date.
The court finds the following facts. At the time of the hearing, the plaintiff was 78 years of age and the defendant 76. When they married, the plaintiff owned a home on Wolcott Street in Waterbury which she and her first husband had built in 1955. After approximately four or five years of marriage, she transferred an interest in the property to Guarini so that he could build a garage and operate a car repair shop there. For this purpose the parties remortgaged the home. The business failed and the defendant obtained employment at Anderson Tire. In 1981 the parties sold the Wolcott Street home and bought a home on East Mountain Road using the proceeds of the Wolcott Street home for a $40,000 down payment. In 1985 the defendant was stricken with the first of several health problems. He suffered a back injury, then developed pneumonia, then encountered problems with his gallbladder. While hospitalized, he contracted pneumonia again. He subsequently was diagnosed with lymphoma for which he underwent chemotherapy. He also underwent gallbladder surgery. During the years 1985, 1986 and 1987, the plaintiff visited the hospitals, and cared for him at home. When he was able to work again, he obtained a part-time position in a hardware store. In the 1990s he became ill again, developing a tumor on his kidney. After surgery to remove the tumor, he lost the use of both legs. He required care and assistance with dressing, bathing and most functions. He used a walker and could not stand alone. Once the plaintiff had to call the police department to help get him up when she and her neighbor could not lift the 200lb. defendant. It should be noted that the plaintiff is a slender person. In April 1998 he was hospitalized at Yale, Gaylord Hospital and then Glendale Manor. His medicare benefits were exhausted while he was at Glendale. Throughout this period the plaintiff visited him everyday and brought him food she had purchased or prepared at home. She brought him clean clothing she had laundered at home. He required two nurses to put him into a hoist and get him up or down. He required catheterization.
The marriage broke down when the defendant refused to apply for Title XIX to pay his medical bills. During discussions with the administrative personnel at Glendale in September and October of 1998, the plaintiff indicated that she could not care for her husband by herself. Under Title XIX Guarini would have been entitled to receive equipment and the assistance of aides to help his wife care for him in the morning and evening and during the night. The defendant could also have remained at Glendale and taken trips outside the convalescent home. The plaintiff would have been able to keep an interest in the marital home. Instead, CT Page 5724 the defendant refused to apply for Title XIX. The defendant told the plaintiff that their marriage had been the most miserable years of his life. He told her to get a divorce. He accused her of having men visit the home while he was gone. He threatened to leave her without resources and demanded that he return home to be cared for by her and two friends. Upon inquiry, the plaintiff learned that these friends, who were employed and had families, were unable to promise the plaintiff assistance at specific times and during the night.
Unwilling to be subjected to continued verbal attacks, the plaintiff stopped visiting the defendant. She changed the home telephone number and instituted this action at the end of 1998. The plaintiff sold one of the two cars in her name, a 1986 Oldsmobile, for $1000.
The defendant returned to the marital residence in spring, 1999. He arrived with his son and police officers because Glendale had been unable to reach the plaintiff. He hired an aide, Eugene, at the rate of $700 per week for round-the-clock care. He purchased a car and put the title in Eugene's name so that he could be brought to his medical appointments. He withdrew his IRA from Travelers Life and Annuity in December 1998. He used part of those proceeds to buy the car for Eugene, pay the car insurance and household bills. The plaintiff resided in one room and the porch and left the home during the day. Eventually she moved out permanently taking the automobile.
It would serve no purpose for the court to repeat the accusations made by the defendant against the plaintiff during the time they lived together after his hospitalization and during the trial. The court notes that there is no issue as to the soundness of the defendant's mind. The court finds that the defendant did not meet his burden of proof with regard to these accusations.
During the marriage, the parties deposited their income and paid all their bills in a timely fashion. At present, the plaintiff receives an annuity of $312 per month which will cease in 30 months. She also receives monthly income from social security and a pension which total approximately $500. The defendant receives social security income of approximately $600 per month.
The defendant owes in excess of $62,000 for medical services. The bill shown on his financial affidavit from Glendale in the amount of $50,700 may be compromised at approximately $35,000. In addition, his counsel stipulated that all billings from American Medical Response listed on the affidavit as totaling $6700 are less than $3500. Therefore his liabilities are estimated to be $45,000. CT Page 5725
The plaintiff has in excess of $26,000 remaining in her savings accounts, the defendant $500.
Based on the foregoing facts, the court finds that the plaintiff has met her burden of proving that the marriage has broken down irretrievably. The court makes the following orders:
1. Neither party shall pay alimony to the other.
2. The marital domicile shall be listed for sale in accordance with the procedure to be determined by the parties. They shall accept any offer within 5% of the listing price. The defendant shall continue to remain in the marital home until the sale and he shall pay the real property taxes and homeowners insurance thereon. Customary closing costs shall be deducted from the proceeds and the net proceeds divided equally between the parties. Any liens attributable to medical services rendered to the defendant shall not be deducted from the proceeds of the sale and shall be exclusively the defendant's responsibility.
3. The plaintiff shall retain her automobile and Webster Bank accounts. The defendant shall retain his retirement income and Webster Bank account. Each party shall maintain their own life insurance.
4. The plaintiff shall return the defendant's paintings and coin collection to the defendant if she finds she has them.
5. The defendant shall obtain those items of personalty which appear on Exhibit 6 under the heading "Before Marriage". She shall also be entitled to obtain 2 television sets, one sofa, two crystal table lamps, the washer and the dryer. These shall be removed within 30 days of the date of this memorandum. The husband shall retain the cherry bedroom set, two television sets, one sofa, the round picnic table in the barn, the dish set in the hutch, the knives and forks, and the pole lamp.
Counsel is commended for their presentation of their clients' respective positions in what is a difficult and tragic matter for both parties.
Judgment may enter accordingly.
 ___________________, J. SANDRA VILARDI LEHENY